DECISION
{¶ 1} Plaintiff-appellee, Columbus Southern Power Company ("CSP"), filed a complaint against defendants-appellants, Patti H. Snyder and Larry H. Snyder, for a restraining order and injunctive relief, breach of contract, tortious/negligent interference with its easement, and punitive damages. The parties agreed to a temporary restraining order ("TRO") permitting CSP to trim, prune, thin or cut back brush or vegetation and up to five feet off any trees interfering with the operation or maintenance of CSP's electric transmission line, and enjoining appellants from obstructing, preventing or impeding CSP from exercising its rights. CSP's motion for a preliminary injunction was consolidated with a trial on the merits.
 {¶ 2} The case was then referred to a magistrate for a hearing on the preliminary and permanent injunction. After a hearing, the magistrate determined that CSP had not presented a case entitling it to injunctive relief. On October 7, 2003, the trial court adopted the magistrate's decision and, also on that date, granted CSP leave to file an amended complaint to add a claim for declaratory relief. Appellants filed an answer to the amended complaint and a counterclaim requesting that CSP's right to remove or trim trees or branches be limited to those trees or brush which actually interfere with the operation of the transmission lines.
 {¶ 3} After a trial, the trial court declared CSP's rights under the easement and determined that the easement allowed CSP to remove trees located within 30 feet of the center line of the electric transmission line operated by CSP on appellants' property for a total easement of 60 feet, and trim trees which are outside that area but which might sway into the 60-foot area.[1] Appellants were ordered not to interfere with CSP's exercise of these rights. Appellants filed a notice of appeal and raise the following assignments of error:
I. The Trial Court erred in granting Plaintiff-Appellee's motion to amend its Complaint to state a new cause of action for declaratory judgment after trial and judgment denying Appellee's original Complaint for injunction.
II. The lower court erred in redefining Appellee's easement as being a minimum of "30-feet from the center line of CSP's [Appellee's] electric transmission lines" when the easement document descriptively defines the easement as that necessary to keep trees and shrubs from interfering with the operation or maintenance of the transmission lines.
III. The judgment of the Trial Court errs in allowing trees to be removed in the discretion of the Appellee without a showing that the trees to be removed interfere with operation of the transmission lines.
 {¶ 4} CSP acquired an easement for the operation and maintenance of an electrical transmission line on the property, now owned by Mrs. Snyder, in 1942. Mrs. Snyder acquired the property from her father in 1976. Since then, appellants have planted trees within the easement under and around the electric lines.
 {¶ 5} In August 1994, Mr. Snyder sent a letter to CSP stating no one from CSP was to enter the property unless he was present to review the proposed work. The letter further stated if any work was done or trees were removed or tapped, legal action would follow.
 {¶ 6} By the first assignment of error, appellants contend that the trial court erred in granting CSP's motion to amend its complaint to state a new cause of action for declaratory judgment after the trial and judgment denying CSP's original complaint for injunction. Appellants argue that the trial court was without jurisdiction to grant leave to amend the complaint because a hearing had occurred and the trial court adopted the magistrate's decision denying CSP injunctive relief.
 {¶ 7} The order of reference, however, and the only matter which the magistrate determined was CSP's claim for injunctive relief. CSP's claims for breach of contract and tortious/negligent interference with CSP's rights, as well as the claim for punitive damages, remained pending before the trial court. There had not been a final judgment regarding all claims.
 {¶ 8} Civ.R. 15(A) allows a trial court to grant leave to amend a complaint and provides that leave "shall be freely given when justice so requires." Trial courts are given broad discretion in determining whether to permit amendments and such determinations will not be disturbed on appeal absent a showing of bad faith, undue delay or undue prejudice. Hoover v. Sumlin
(1984), 12 Ohio St.3d 1. Appellants have not demonstrated bad faith, undue delay or undue prejudice. The trial court did not err in allowing CSP to amend its complaint and appellants' first assignment of error is not well-taken.
 {¶ 9} By the second and third assignments of error, appellants contend that the trial court erred in redefining CSP's easement as being a minimum of "30-feet from the center line of CSP's electric transmission lines" and allowing trees to be removed without a showing that the trees to be removed interfere with operation of the transmission lines. The easement, as originally granted in 1942, "includes the right to trim or remove from time to time any trees or brush along or upon said easement which may interfere with the construction, reconstruction, operation and/or maintenance of said transmission line." (Exhibit A to verified complaint.) Appellants do not contend that, pursuant to the easement, CSP lacks the right to remove any trees that interfere with its electrical line but do contend that CSP was required to demonstrate that the trees interfered with the transmission line and that the trial court did not have the authority to redefine the easement as being 30 feet from the center line of the electric transmission line.
 {¶ 10} The trial court found that CSP holds an easement that encumbers appellants' real property and, pursuant to that easement, CSP operates an electric transmission line across the property. The easement specifically grants CSP the right to trim or remove trees or brush which may interfere with the operation and/or maintenance of CSP's electric transmission line. The trial court found that those trees located within 30 feet of the center line of the electric transmission line, those trees that might grow within a six-year period to six and one-half feet below the lowest sag point of the transmission, and/or those trees that might sway into this area within a six-year period interfere with CSP's exercise of its rights granted to it by the easement. Thus, the trial court permitted CSP to remove all trees or brush which fit within the above description and ordered appellants not to obstruct or interfere with CSP exercising its rights.
 {¶ 11} At the trial, CSP provided the testimony of four witnesses who testified that the trees which need to be removed are those trees within 30 feet of the center line of the electric transmission line (total of 60 feet). There was also testimony to support the need to trim those trees that might sway into this area.
 {¶ 12} Jay Larrick, CSP's manager of the transmission right-of-way department, testified that the trees on appellants' property are directly below the transmission line and would impede progress in an emergency situation because motor vehicle equipment cannot be operated around the transmission line without being careful to avoid the trees.
 {¶ 13} Robert Parr, a CSP forester, testified that he was involved in the trimming of appellants' trees pursuant to the TRO and the tree cutting crew had difficulty getting the equipment in and around the trees to trim. He stated the equipment could not have been safely used during the night. Appellee introduced photos taken by Mr. Parr of trees which had been burned or were in contact with the transmission line.
 {¶ 14} The right-of-way forestry supervisor, Michael Chedester, testified that there are many factors to determine whether trees should be trimmed or removed, such as:
* * * Construction of the facility's hydra poles and that type of thing, easement variations and, also, looking at vegetation cover type. if we have tall growing tree species that will grow to a point where they will interfere with those lines, eventually we want to remove those, and we would also take a look at trees on the side of the line for disease, decay, various factors that may affect the health of the tree and potentially would be a problem for us in the future, and we would want to address that problem while we are there."
(Tr. at 48.) He then testified that, on appellants' property, a width of 60 feet cleared of trees was necessary. Trees outside the 60-foot width could fall or sway into the line. The forestry program attempts to prepare for emergency situations and create a path for line mechanics to patrol and restore service, if necessary. Any trees left beneath the line require a buffer of over six feet of clearance from the lowest sag point of the line to prevent flash overs. Although it is not necessary to remove all trees on appellants' property to meet the above criteria, the trees need to be trimmed down to 13 feet, which will, in essence, kill the trees because the crown of the tree will be reduced to the point where the tree will not be able to feed itself because the foliage was removed. Since the trees are going to die as a result of the trimming, CSP wants to remove them. The witness, Mr. Chedester, testified that CSP had varying widths of right-of-way based on the type of line, the standard today would be 100 feet, but CSP was making an accommodation with appellants' property by only seeking 60 feet; however, close to 200 trees would be removed.
 {¶ 15} Eric Engdahl, the senior engineer in CSP's transmission asset management organization, testified concerning the danger of trees being close to the line, as follows:
* * * As the distance between our conductor and the tree decreases, at some point the air will start to ionize. that's literally the electrical insulation of the air that starts to break down and become conducted. as that occurs, you actually start to have a voltage discharge between the tree and the conductor. if that path is of sufficiently low impedance, which it often is but not always, but often is, you will eventually get a full current from the conductor to the tree, causing the phase-to-ground fault, which will cause our breakers to operate and take the line out of service.
(Tr. at 83.) He stated that, if the tree and conductor touch, it would automatically cause a phase-to-ground fault causing the breakers to operate and the line to lock out service. There is a danger to anyone touching the trees under these conditions. To maintain the line, CSP needs clearances of 30 feet from the center and six and one-half feet from the lowest sag. If not, Mr. Engdahl testified, with the line in its current condition and right-of-way maintenance, if there were other outages it would sag very quickly into the conductors and lock out permanently.
 {¶ 16} The 1942 easement grants CSP the right to trim or remove trees which interfere with the operation or maintenance of the transmission line. CSP provided evidence that the trees which need to be removed because of interference with the operation or maintenance of the transmission line are those which are within 30 feet of the center line of the electric transmission line and those trees that might grow within six and one-half feet below the lowest sag point of the transmission line and also those trees that might sway into this area. Based on the evidence, the trial court did not err in defining the area of the easement with greater specificity. Appellants' second and third assignments of error are not well-taken.
 {¶ 17} For the foregoing reasons, appellants' assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Lazarus, P.J., and Bryant, J., concur.
[1]At the trial, CSP presented no evidence as to punitive damages and, at oral argument before this court, both parties agreed that there were no issues remaining before the trial court.